UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x

In the Matter of CARLOS DUARTE,                              Chapter 13

                                                            Case No. 10-78606-reg
                                    Debtor.
---------------------------------------------------------------- x

## MEMORANDUM DECISION

This matter is before the Court pursuant to an objection by the Chapter 13 trustee (the

"Trustee") to confirmation of the Chapter 13 plan ("Plan") proposed by Carlos Duarte (the

"Debtor"). The Trustee bases his objection on the Debtor's alleged failure to contribute  all of his

disposable income to the Plan pursuant to 11 U.S.C. § 1325(b)(1).  The Trustee alleges that

100% of the State and Federal income tax refunds due the Debtor and the Debtor's non-filing

spouse (the "Non-Debtor Spouse") post-petition constitute property of the Debtor's estate or the

Debtor's disposable income.  In order to resolve the Trustee's objection, the Court must

determine whether all of the  income tax refunds generated by the jointly filed income tax return

are allocable solely  to the Debtor and therefore are  property of the estate.  In *In re Malewicz*,

No. 8-09-74807-reg, 2010 WL 4613119 (Bankr. E.D.N.Y., Nov. 4, 2010), this Court held that a

non-debtor spouse is not required by the Bankruptcy Code to devote his or her share of a joint

tax refund to payments under the Plan, but the Court was not called on to address how to

determine each spouse's share.  Bankruptcy Courts in New York have almost uniformly held that

joint income tax refunds are presumptively  to be divided equally between debtor and non-debtor

spouses, and other jurisdictions have adopted various other methods of allocating tax refunds

under similar circumstances.  This Court adopts the formula enunciated by the Tenth Circuit

Bankruptcy Appellate Panel ("BAP") in *In re Crowson*, 431 B.R. 484 (10th Cir. BAP 2010).

This formula utilizes the approach suggested by the Internal Revenue Service in its revenue rulings when determining how to treat each spouse's interest in an income tax refund for the purposes of applying a credit towards one spouse's separate tax liability for a prior year, or in the event of the death of a spouse.  The bankruptcy process as made clear by statute and case law creates an estate which operates largely for the benefit of the creditors of the debtor. The bankruptcy statutes, except in narrow and specific sections are not designed to consider the complex policy issues surrounding a division of assets between spouses. Therefore it would be wholly inappropriate in a bankruptcy proceeding  to borrow the concept of marital property which exists under New York Domestic Relations Law where the primary purpose is to determine how to equitably divide assets between divorcing spouses.

***Facts***

The Debtor filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code on October 29, 2010 ("Petition Date").  Schedule I of the Debtor's petition indicates that the Debtor and his Non-Debtor Spouse have one minor child. The Debtor's average monthly income is  $4,203.35.  Schedule I  states that the Non-Debtor Spouse is self-employed with an average gross income of $1,085.00 per month.  According to Schedule J, the family's gross monthly expenses amount to $4,702.00.  On February 15, 2010, the Non-Debtor Spouse filed an amended affidavit of contribution, pledging her total monthly net wages of $917.00 to the Debtor's plan. The Debtor and the Non-Debtor Spouse have routinely filed joint state and federal income tax returns.  During 2010, the Debtor had both state and federal taxes withheld from his monthly pay. The Non-Debtor Spouse however, made no estimated tax payments for 2010.  The Debtor filed Federal and State joint income tax returns for the tax year 2010.  They are due income tax

2

refunds for 2010 from both the State and Federal governments.

On November 29, 2010, the Debtor filed the Plan, which provides for a distribution of 1% to unsecured creditors.  The Plan also states:

> during the pendency of this case, if unsecured creditors are paid, pursuant to paragraph 2(c), less than one hundred percent (100%), the debtor shall provide the Trustee with signed copies of filed federal and state tax returns for each year no later than April 15th of the year following the tax period.  Indicated tax refunds are to be paid to the Trustee upon receipt; however, no later than June 15th of the year in which the tax returns are filed.

The Debtor concedes that he is required to turn over his 2010 tax refunds to the Trustee, and the Non-Debtor Spouse is not obligated to turn over her share of the tax refunds.  The Debtor asserts he is entitled to approximately 50% of the total refund and therefore is only required to turn over 50% to the Trustee.  The Trustee has objected to confirmation of the Plan, citing Bankruptcy Code § 1325(b)(1)(B).  The Trustee argues that the Debtor's interest in the tax refund is 100% and therefore the entire refund must be turned over to the Trustee  The Court held a hearing to consider confirmation of the Plan and approved confirmation, but reserved for decision the extent to which the joint tax refunds are property of the Debtor's estate, which the Debtor has agreed to commit towards the Plan payments.

*Arguments of the Parties*

According to the Trustee, while this Court held in *In re Malewicz,* 2010 WL 4613119, that only the debtor's share of tax refunds received post-confirmation is required to be turned over to the Trustee pursuant to the Plan and the Order confirming the Plan, the facts of the instant case are distinguishable and compel a different result.  The Trustee argues that because the tax refunds are to be received prior to confirmation, the entire refund is property of the

3

Debtor's estate or the Debtor's disposable income.  The Debtor's failure to turn over the entire refund is a failure to contribute all property of the estate to the Plan and therefore, confirmation must be denied pursuant to Bankruptcy Code § 1325(b)(1)(B).

The Trustee argues that the entire 2010 refunds for both the State and Federal taxes resulted from overpayments made solely by the Debtor because only the Debtor had taxes withheld during 2010.  As a result, the Debtor's deductions have already been applied to the Non-Debtor Spouse's tax liability which was incurred throughout 2010, and thus any refund is solely property of the Debtor's estate, and must be turned over to the Trustee.  The Trustee also argues that even if  the Court applies a 50/50 analysis as a presumption, which has been adopted by some courts with respect to the division of tax refunds between spouses, the facts of this case rebut such presumption and warrant a finding that 100% of the tax refunds are property of the Debtor's estate.

While the Debtor agrees to turn over to the Trustee his share of the refunds,  the Debtor claims that his share is 50% of  the total refunds. The Debtor urges the Court to apply the "50/50 Rule" to determine each spouse's respective rights in and to tax refunds where one spouse files a petition in bankruptcy, a test employed by a majority of Bankruptcy Courts in New York.  *See In re Barrow,* 306 B.R. 28 (Bankr. W.D.N.Y. 2004); *In re Marciano,* 372 B.R. 211 (Bankr. S.D.N.Y. 2007); *In re Hejmowski*, 296 B.R. 645 (Bankr. W.D.N.Y. 2003); *In re Glenn,* 430 B.R. 56 (Bankr. N.D.N.Y. 2010) (Ownership of tax refunds for purposes of determining claimed exemptions would be allocated 50/50 absent unusual circumstances); and *In re Spina,* 416 B.R. 92 (Bankr. E.D.N.Y. 2009) (50/50 Rule adopted as a rebuttable presumption on the basis that the Internal Revenue Code treats tax liabilities of spouses and joint obligations, giving each spouse a

right of contribution of 50% in the event the other spouse fails to pay the tax obligation).

*Discussion*

The central issue raised by the Trustee is whether the Debtor's interest in the tax refunds is greater than the 50% he has agreed to turn over to the Trustee. In the *In re Malewicz* case this Court ruled that a non-debtor spouse's share of a joint tax refund received post-confirmation is not property of the debtor's estate or part of the "projected disposable income" and therefore unless the non-debtor spouse specifically consents to contribute the refund to the Plan, the non-debtor spouse's share of tax refunds received post-confirmation is not to be turned over to the Trustee. The Non-Debtor Spouse is not required to devote her share of tax refunds to payments under the Plan and property of the Debtor's estate does not include the property of the Non-Debtor Spouse. Therefore, the Non-Debtor Spouse's share of the tax refunds are not included in the calculation of Plan payments. Because the Debtor consents to turn over his share of the tax refunds, the sole issue for the Court to determine is how to calculate the Debtor's interest in the tax refunds.[1] This issue is resolved by fixing which portion of the joint refunds constitute property of the Debtor's estate.

*Property of the Debtor's Estate*

The Court begins its analysis with sections 541(a) and 1306 of the Bankruptcy Code which define property of the Debtor's estate. "A debtor's future federal income tax refund is easily included in the comprehensive definition of 'property of the estate' under Bankruptcy Code Sections 541(a) and 1306(a) and (b)." *In re LaPlana,* 363 B.R. 259, 262 (Bankr. M.D. Fla.

---

[1]The Court is not determining whether the Bankruptcy Code requires a debtor to turn over pre- or post-confirmation tax refunds to the Chapter 13 trustee.

2007) (citing *In re Lafanette*, 20 B.R. 394 (Bankr. W.D. La. 1996), *Matter of Doan*, 672 F.2d

831, 833 (11th Cir. 1982), and *Segal v. Rochelle,* 382 U.S. 375, 380, 86 S.Ct. 511, 515, 15

L.Ed.2d 428 (1966)).[2]

 In bankruptcy, applicable state law defines property interests.  *Musso v. Ostashko*, 468

F.3d 99, 105 (2d Cir. 2006) (citing *Butner v. United States,* 440 U.S. 48, 54, 99 S. Ct. 914, 59

L.Ed.2d 136 (1979)).  State law also applies to determine each spouse's specific property rights

in a joint federal tax refund.  *In re Haedo*, 211 B.R. 149, 153 (Bankr. S.D.N.Y. 1997) (citing *In

re Honomichl*, 82 B.R. 92, 94 (Bankr. S.D. Iowa 1987); and *In re Taylor*, 22 B.R. 888, 890

(Bankr. N.D. Ohio 1982).  *See also Callaway v. C.I.R.*, 231 F.3d 106, 117 (2d Cir 2000) (federal

tax law " 'creates no property rights but merely attaches consequences, federally defined, to

rights created under state law' ") (citing *United States v. National Bank of Commerce,* 472 U.S.

713, 722, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985) (other citations omitted)).

 *Debtor's Legal Interest in Joint Tax Refund*

 There is no applicable New York statute which defines or governs the rights of spouses

to tax refunds.  *In re Marciano,* 372 B.R. at 215; *In re Barrow,* 306 B.R. at 30.  Because this

issue cannot be resolved by a specific New York statute, courts have turned to other areas of the

law for guidance.  Bankruptcy Courts in  New York and in other jurisdictions without applicable

statutes have relied individually or in concert where appropriate on domestic relations law or

---

 [2]Subsection 541(a)(2) of the Bankruptcy Code provides that property of the estate also includes "[a]ll interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is . . . under the sole, equal, or joint management and control of the debtor; or . . . liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable."  Because New York is not a community property state, subsection 541(a)(2) does not apply.  *In re Spina,* 416 B.R. at 96.

specific provisions of the Internal Revenue Code to create a workable process to resolve this issue. As a result, four different approaches have emerged. The approach the Trustee urges the Court to adopt is known as the" Withholding Rule," and is considered the majority approach. Under the Withholding Rule, the tax refund is divided based upon the extent to which the refund is attributable to the separate withholdings of each spouse. *See In re Carlson,* 394 B.R. 491, 494 (8th Cir. BAP 2008); *In re Kleinfeldt,* 287 B.R. 291, 294-95 (10th Cir. BAP 2002); and *In re Smith*, 310 B.R. 320, 323 (Bankr. N.D. Ohio 2004). This approach has been adopted in districts where applicable state law does not presume equal ownership of property by spouses. The Withholding Rule starts with the premise that the mere filing of a joint income tax return is not a sufficient action to transfer any refund from one spouse to another. *In re Carlson,* 394 B.R. at 495-96*; In re WDH Howell*, *LLC*, 294 B.R. 613, 619–20 (Bankr. D. N.J. 2003); and *Gordon v. U.S.*, 757 F.2d 1157, 1160 (11th Cir. 1985) ("Where spouses claim a refund under a joint return, the refund is divided between the spouses, with each receiving a percentage of the refund equivalent to his or her proportion of the withheld tax payments."). Each spouse has a separate legal interest in the refund based solely upon the percentage of withholdings attributable to each spouse's income. If this approach were adopted in this case, 100% of the Federal and State income tax refunds would be deemed property of the Debtor's estate.

The Withholding Rule has been criticized by some courts because it only considers one component which creates the refund, namely, the monies withheld from each spouse's salary. In cases such as this where both spouses earn income, both spouses may have accrued tax credits such as earned income credits, education credits and additional child tax credits, which are treated as payments pursuant to section 6401 of the Internal Revenue Code ("IRC") and can

affect the amount of an income tax refund. *In re Crowson,* 431 B.R. at 490 n. 20 (citing 26 U.S.C. § 6401(b)(1); 26 C.F.R. § 301.6401-1); *Hundley v. Marsh,* 459 Mass. 78, 85, 944 N.E.2d 127, 133 (Mass. 2011). As recently noted by the *Crowson* court, the Withholding Rule is an appropriate method only where a joint tax return consists solely of returns from withholdings made by one spouse and does not involve any tax credits or other credits. *In re Crowson,* 431 B.R. at 490 n. 19. For these reasons, the 10th Circuit BAP has limited the application of *In re Kleinfeldt,* its prior decision adopting the Withholding Rule, to cases where a joint tax return consists solely of returns of one spouse's wage withholdings. *Id.*

A second approach is the "50/50 Rule." While it is considered a minority approach, it has been adopted by Bankruptcy Courts in New York and has gained a following in other jurisdictions as well. Unlike the Withholding Rule, the 50/50 Rule does not start with the premise that each spouse has a separate legal interest in a tax refund. Instead, the refund is divided equally, based on an application of § 326 of the New York Domestic Relations Law ("DRL") regarding division of marital property in a divorce proceeding. *In re Hejmowski,* 296 B.R. at 648 - 49; *In re Marciano,* 372 B.R. at 216; *In re Barrow,* 306 B.R. at 31; and *In re Glenn,* 430 B.R. at 62. The argument for adopting the 50/50 Rule in New York is that the DRL "offers an illustrative definition [of marital property] that provides a useful device for apportioning ownership." *In re Marciano,* 372 B.R. at 215; *see also In re Hejmowski,* 296 B.R. at 649-50. The Bankruptcy Court in *In re Marciano* opined on the fairness of a 50/50 division, and proffered that the Second Circuit Court of Appeals relied on DRL § 326 to determine the scope of property of the estate in a Chapter 7 proceeding. 372 B.R. at 215 (*citing Musso v. Ostashko,* 468 F.3d at 99). Some courts treat the 50/50 division as a rebuttable presumption,

8

which may be adjusted based on evidence of the spouses' present conduct or history of financial

management between the parties.  *See In re Barrow*, 306 B.R. at 31; and *In re Marciano,* 372

B.R. at 216-17.

While the 50/50 Rule is simple to apply and has at first blush the appearance of fairness

in its treatment of the parties, it has its detractors.  The major criticism rests on the fact that

domestic relations laws serve a very different purpose than bankruptcy law and are in fact

inconsistent with the policies informing bankruptcy law.  *In re Crowson,* 431 B.R. at 489.  As

the Court in *Crowson* notes:

> [the] laws of marital dissolution require a just and equitable division of property
> between spouses based upon the means and needs of each. In bankruptcy, the
> court is concerned with whether the debtor has a property interest that is available
> for distribution to creditors, not whether a non-debtor spouse might have a greater
> need for the debtor's property. Moreover, laws regarding the equitable distribution
> of marital property do not purport to establish property rights in separate property
> acquired during marriage, and the equitable division concept does not arise until
> the parties seek a divorce.

*Id.* (footnotes omitted).

The third approach is the "Income Rule" which calls for a division of the refund in

proportion to each spouse's income.  *See In re Verill,* 17 B.R. 652, 655 (Bankr. D. Md. 1982);

and *In re Kestner,* 9 B.R. 334, 336 (E.D. Va. 1981).  This approach has little support, and most

courts commenting on the Income Rule immediately recognize the flaw in dividing the refund on

a factor which may have very little to do with actual contributions to the total tax obligations

between spouses.  *Hundley v. Marsh,* 944 N.E.2d at 131, n. 6.[3]

---

[3]Because the Debtor and the Trustee have not advocated this approach, and because of its
inherent flaws, the Court will not include a discussion of this approach in its analysis.

The fourth approach is the "Separate Filings Rule" first articulated by the 10th Circuit BAP in *In re Crowson*, *supra*. The Tenth Circuit BAP was called on to determine the extent to which a joint tax refund constituted property of the debtor's estate, where only one spouse had filed a petition for relief under Chapter 7 of the Bankruptcy Code. After considering and rejecting the Withholding Rule and the 50/50 Rule, the court examined revenue rulings issued by the Internal Revenue Service ("IRS") regarding the allocation of overpayments between taxpayers filing joint tax returns. The court determined that although it was not bound by the revenue rulings issued by the IRS or the Internal Revenue Manual, the Tenth Circuit had granted revenue rulings deference in other circumstances, and the revenue rulings and the Internal Revenue Manual provided helpful guidance on this issue. *Id.* at 490-91. The *Crowson* court reviewed Revenue Ruling 74-611, in which the IRS ruled that when a joint return by a husband and wife is filed, each spouse has a separate interest in the reported income and any overpayment. The *Crowson* court also reviewed Revenue Ruling 80-7, where these principles are applied to determine what portion of a married couple's joint refund could be retained by the IRS to offset one spouse's prior year's liability, which in turn was borrowed from the IRS's previous method of determining a decedent's separate tax liability or refund generated by a joint return with the surviving spouse. Based on these rulings, the *Crowson* court concluded that "allocating tax liability and credits between a decedent's estate and the surviving spouse, or between spouses for the purpose of offsetting only one spouse's refund against a prior liability, is analogous to allocating the tax liabilities and refunds between a bankruptcy estate and a non-filing spouse." *Id.* at 491. Under the formula adopted by the court in *Crowson*, each spouse's separate tax liability is determined based on a calculation of what each spouses's tax obligation

10

would have been if the spouses had filed separately and a calculation of the contributions each spouse has actually made to the total payments.  This method takes into consideration taxes withheld, estimated tax payments, and other out of pocket payments, along with credits such as the earned income credit, the additional child tax credit and rebate credits.[4]

The Separate Filings Rule has been adopted by the highest court in Massachusetts, the Bankruptcy Court for the Northern District of Georgia and the Bankruptcy Court for the District of Montana.  *Hundley v. Marsh,* 459 Mass. at 86, 944 N.E.2d at 134; *In re Evans,* No. 10-10077-WHD, 2010 WL 6612501 (Bankr. N.D.Ga., Dec. 28, 2010); and *In re Palmer,* No. 10-60099-7, 2011 WL 890690 (Bankr. D. Mont., Mar. 11, 2011).  Courts adopting this method recognize that it appropriately takes into consideration each spouse's income, tax credits and withholdings and is consistent with the allocation methods employed by the IRS when one spouse dies or one spouse has a tax liability from a year prior to their marriage.  *Hundley v. Marsh, supra*, and *In re Palmer, supra.*  The one criticism leveled against this approach is that it is not a "bright-line rule" and therefore it is not simple to understand or apply.  *In re Smith,* No. 09-72276-BHL-7A, 2011 WL 345865 (Bankr. S.D. Ind., Feb. 2, 2011).

*Applicable Test*

While the 50/50 Rule is generally regarded with favor in New York and the Debtor urges its application in this case, this Court believes the 50/50 Rule is not the appropriate test for determining the rights in a bankruptcy proceeding of the debtor and a non-filing spouse in a tax refund.  The 50/50 Rule adopts as a very building block of its analysis the concept of

---

[4]For a more detailed analysis of the formula and its application, see *In re Crowson*, 431 B.R. at 491-96, and *Hundley v. Marsh,* 459 Mass. at 86, 944 N.E.2d at 134 (*Crowson* formula applied, but slightly the method of apportioning the child tax credit is modified).

11

marital property found in the DRL, which declares that "marriage is an economic partnership and that, upon dissolution of the marriage, the tangible fruit of that partnership, the marital property, should be equitably divided between the parties." N.Y. Dom. Rel. Law § 236(B)(1)(c) at Practice Commentaries, C236B:4 (McKinney 2010).  This reasoning appeals to the desire to resolve this question as equitably and as simply as possible. However, upon closer examination, this rule cannot be reconciled with the Bankruptcy Code and the overall goals of bankruptcy.  The purpose of defining marital property in a divorce action is to ensure that New York courts have the authority to achieve an equitable division of property.  *Musso v. Ostashko,* 468 F.3d at 105-106.  In divorce actions, the courts in New York are charged with distributing marital property equitably, based on various factors, including the income and property of each party at the time of marriage and as of the commencement of the divorce proceedings, the length of the marriage and the ages and health of the parties, the relative needs of the parties and any other factors the court determines is appropriate to take into consideration.  N.Y. Dom. Rel. Law § 236(B)(5)(d) (McKinney 2010).  However, each spouse does not obtain an equal interest in each distinct marital asset.  As explained by the Second Circuit:

> It is a *remedy* available to the courts to ensure that traditional title principles do not prevent the courts from achieving equity between the parties to an action.  A spouse without legal title has no interest in marital property prior to obtaining a judgment creating such interest, for the concept of marital property only exists 'as an ancillary remedy to the dissolution of a marriage.'

*Musso v. Ostashko,* 468 F.3d at 107 (*citing Liebowitz v. Liebowitz,* 93 A.D.2d 535, 462 N.Y.S.2d 469, 473 (N.Y. App. Div. 1983) (emphasis in original)).  The spouse has no "inchoate, prejudgment" interest in the property, but is in fact a judgment creditor, and as to third parties,

that spouse's right to the property is only cemented upon entry of the judgment.  *Id.* at 107.[5]

     While the goal of domestic relations law is to provide for an equitable distribution of marital property, the goal of bankruptcy is quite different.  Upon the filing of a petition for relief under the Bankruptcy Code, a new entity called the debtor's estate is created.  This estate is comprised of property contributed by the debtor and by statute, and exists for the benefit of the creditors of the debtor.  The contours of these property rights are set forth in Bankruptcy Code § 541, and enlarged in a Chapter 13 case pursuant to Bankruptcy Code § 1306. The Bankruptcy Code does include  "community property" as property of the debtor's estate in community property jurisdictions, but the Bankruptcy Code does not enlarge or reduce the property rights a non-debtor spouse may have under applicable state law.  Borrowing the concept of marital property from the DRL in order to determine the Debtor's interest in and to the income tax refunds in this case does not further the goals of bankruptcy, which is to provide for the distribution of the Debtor's property to his or her creditors.  *In re Crowson,* 431 B.R. at 489.  Rather, it imposes a division of property between spouses at the potential expense of a debtor's creditors.  In fact, dividing the tax refund in half in this case is inconsistent with the goal of equitable distribution of marital property, because it is only one marital asset.  In a divorce, the Court is charged with achieving equity of distribution of all of the property, not a piecemeal division of any one asset on a 50/50 basis.  If it were appropriate to consider each piece of marital property as half-owned by the debtor's spouse, then a trustee could rightfully seek

---

[5]At least one lower court has questioned whether under New York law an equitable distribution award under a divorce judgment confers upon the benefitted spouse the status of a transferee and not a mere judgment creditor.  *Darling v. Darling,* 22 Misc.3d 343, 355-56, 869 N.Y.S.2d 307, 318 (N.Y. 2008).  However, this disagreement does not alter the applicability of *Musso v. Oshatsko,* as no divorce has been commenced in this case.

turnover of half of all of the marital assets in the non-debtor spouse's possession.  Clearly, this is not the case, and demonstrates a major weakness in utilizing the 50/50 Rule: it is inconsistent with the DRL as it is actually applied, and is unsupported by any provision of the Bankruptcy Code.

The Withholding Rule, the formula advocated by the Trustee, is equally deficient.  As has been noted by other courts, the Withholding Rule is too limited as it focuses on only one aspect of a joint tax return, and fails to take into account the tax credits each spouse may be entitled to, which can have a significant effect on the overall tax liability or refund.  *See In re Barrow,* 306 B.R. at 30-31 ("For many taxpayers, a significant portion of the refund is attributable . . . to any of a number of credits, such as the child tax credit or credits for education or for education or for child and dependent care expenses."); and  *In re Crowson,* 431 B.R. 484, n. 20.

Having considered and rejected the 50/50 Rule and the Withholding Rule, the Court turns to the Separate Filings Rule.  The Court agrees with Judge Trust 's thoughtful and well reasoned opinion in *In re Spina,* 416 B.R. at 98, and with the Tenth Circuit BAP in *In re Crowson, supra,* that the Internal Revenue Code provides proper guidance on how to allocate tax refunds. While Judge Trust analogized to the treatment of tax obligations by the Internal Revenue Code and New York law as joint and several liabilities for joint filers, the *Crowson* court looked to specific revenue rulings concerning the allocation of overpayments between taxpayers who have filed joint returns.  Section 6402(a) of the Internal Revenue Code provides that in the case of an overpayment, the IRS may credit the amount of the overpayment including any interest against any liability with respect to an IRS tax "on the part of the person who made the overpayment and shall refund the balance to such person."   26 U.S.C. § 6402(a).  The IRS has issued revenue

14

rulings setting forth mechanisms for determining each spouse's share of a tax refund in the event

of death of a spouse, or if one spouse owed taxes for a prior year while the spouse was single.  In

these instances, the IRS manual has specific methods for allocating refunds between taxpayers

filing a joint return.  See IRM § 21.4.6.5, *Refund Offset Procedures*; <u>Rev. Rul. 80-7, 1980-1 C.B.</u>

<u>296: and Rev. Rul. 87-52, 1987-1 C.B. 347</u>.  Because the IRS has determined a formula for

fixing the rights of each spouse in and to a refund generated by a joint tax return, there is no need

to analogize to other provisions of the Internal Revenue Code.

　　　　While the court in *Crowson* determined that the IRS manual and the IRS revenue rulings

are not binding upon it, they were to be given deference according to Tenth Circuit precedent.

*Crowson,* 431 B.R. at 490, n. 24. The Bankruptcy Court for the District of Montana also adopted

the *Crowson* court's analysis, and cited to the United States Supreme Court *in Ransom v. FIA*

*Card Services, N.A.*, ___ U.S. ___, 131 S. Ct. 716, 131 S. Ct. 716 (2011), in which the Supreme

Court held that it was appropriate to consult the Internal Revenue Manual for guidance when

interpreting the national and local standards to determine the proper treatment of the car-

ownership deduction. *In re Palmer*, 2011 WL 890690 at *5, n. 1.  This Court agrees with the

*Crowson* and *Palmer* courts, and finds Revenue Ruling 74-611, in which the IRS ruled that each

spouse has a separate interest in jointly reported income and a separate interest in any

overpayment of income tax, and the other related revenue rulings, are valid and persuasive on

this issue. Therefore, this Court affords these revenue rulings deference. See *United States v.*

*Mead Corp*., 533 U.S. 218, 1221 S.Ct. 2164, 150 L.Ed.2d 292 (2001) (Agency manual entitled to

deference depending upon its persuasiveness).

　　　　The lone complaint courts lodge against the Separate Filings Rule is that it is complicated

and unwieldy. The Court agrees that the test may be somewhat difficult to apply. However, this Court believes it is the best approach to allocate tax liability and credits between spouses, taking into account income earned, credits that each may be entitled to receive, and taxes withheld. The fact that it may be complicated is no reason to reject it for a "bright line" approach which has the attraction of simplicity but fails to protect each spouses's true legal interest in and to the tax refund. This Court is not ruling that the Trustee, the debtor and the non-debtor spouse in each case must undertake this analysis in order to determine each parties' interest in a joint income tax refund, but this formula shall be employed where the parties do not agree on the proper allocation. Furthermore, in contested matters of this type the Court will rely upon the parties to calculate the debtor's interest using the formula set forth in *Crowson,* as modified by *Hundley v. Marsh*, 459 Mass. at 87, 944 N.E.2d at 134, n. 12.

The Separate Filings Rule is consistent with Second Circuit precedent. In *Callaway v. C.I.R.,* this Circuit recognized that the filing of joint tax returns does not alter property rights between spouses and "does not have the effect of converting the income of one spouse into the income of another." 231 F.3d at 117 (*citing McClelland v. Massinga*, 786 F.2d 1205, 1210 (4th Cir. 1986) (mere filing of a joint tax return by a husband and wife does not render the property taxed or the tax paid joint property.")). By the same token, the issuance of a tax refund check in the names of the spouses jointly does not have the effect of converting each spouse's interest in the refund check into an asset to be shared equally between the spouses. While a couple has the right to determine between themselves the appropriate allocation of a joint tax refund, once a bankruptcy petition is filed, the debtor spouse only has an interest in his or her share of the refund.

*Conclusion*

For the foregoing reasons, the Court finds that the Debtor must turn over to the Trustee his share of the income tax refunds for 2010, as determined under the Separate Filings Rule. An order consistent with this Memorandum Decision shall be entered forthwith.

Dated: Central Islip, New York
      July    12, 2011                     By: ***/s/ Robert E. Grossman***
                                                     Robert E. Grossman
                                                     U.S. Bankruptcy Judge